UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMIE WEDDLE,

      Plaintiff,

          v.                            CAUSE NO. 3:22-CV-931-JD-MGG

RON NEAL, JOSEPH SCHNEIDER, and
HANELY,

      Defendants.

OPINION AND ORDER

Jamie Weddle, a prisoner without a lawyer, filed a complaint, alleging that a

correctional officer used excessive force against him at Indiana State Prison and that he

has been retaliated against for filing grievances about that alleged use of excessive force.

ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint,

however inartfully pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation

marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must

review the merits of a prisoner complaint and dismiss it if the action is frivolous or

malicious, fails to state a claim upon which relief may be granted, or seeks monetary

relief against a defendant who is immune from such relief.

Weddle had a job as a sanitation worker at Indiana State Prison. ECF 2 at 2. On

August 8, 2022, he was rinsing out a mop head at a sink in a utility closet, when

Correctional Officer Hanely entered the utility closet and pushed Weddle away from

the sink so that she could rinse out her bowls. *Id.* Weddle crashed into the ice machine and bruised his right hip. *Id.* Weddle contends Officer Hanely's actions were unnecessary because she could have either asked him to move or used a sink in the nearby staff restroom that was unoccupied. *Id.* Weddle asked that she not touch him anymore, especially in the utility closet where there were no cameras. *Id.* Officer Hanely responded that she is an officer and can do whatever she wants. *Id.* at 2-3. Weddle left the utility closet to avoid further incident. *Id.* at 3.

A little while later that day, Officer Hanely asked to speak to Weddle. ECF 2 at 3. She asked why he left the utility closet earlier, and he told her that he did not feel comfortable in that situation, especially because they were off camera and he got bad vibes from her. *Id.* at 3. She got mad, told him to lock into his cell, and told other prisoners that she was going to write him up for what happened in the utility closet. *Id.* She said she was going to have Weddle fired from his job. *Id.*

That night, Weddle submitted an Ombudsman complaint through his tablet about what had happened that day with Officer Hanely. ECF 2 at 3. Weddle also filed a grievance about the incident in the utility closet that day. ECF 2 at 4. He alleges the grievance was logged on August 10, 2022, and on September 2, 2022, the grievance specialist responded, "I have advised Capt. McCann, Lt. Draper, Capt. Bootz, and Maj. Wardlow of your issue for them to look into. I was unable to find this incident on video." *Id.* at 4.

The day after the incident, August 9, 2022, Weddle's supervisor, Unit Team Manager Joseph Schneider, told him that Officer Hanely had written him up for a

misconduct report for a major disciplinary offense. ECF 2 at 3. But he said he was not going to fire Weddle based on it because he could be found not guilty of the offense or it could end up being downgraded to a minor disciplinary offense. *Id.* at 3.

That same day, Officer Hanely threatened to kill him with an AR-15 that she said she keeps in the trunk of her car if he continued to complain about her. ECF 2 at 3. Weddle was not deterred and continued filing written requests and letters to Warden Ron Neal, Assistant Warden Dawn Buss, and the Office of Investigations (I&I) and Intelligence about Officer Hanely's actions and her continued harassment. *Id.*

Weddle's father and brother also called the prison in mid-August to complain about Officer Hanely's harassing behavior towards him. ECF 2 at 3-4. The day after Weddle's father spoke to someone at the prison, UTM Schneider told Weddle that his father called, but he couldn't do anything about Officer Hanely's behavior unless other offenders gave video-recorded statements to I&I about her. *Id.* at 4. At the same time, he warned the offenders that giving statements might cause them to be targeted as well. *Id.*

On August 31, 2022, UTM Schneider fired Weddle from his sanitation job. ECF 2 at 4. He told Weddle that he was fired for filing grievances and written complaints about Officer Hanely's behavior. *Id.* UTM Schneider reported that the misconduct report Officer Hanely submitted had been lost, so that was not the basis for his termination. *Id.* Just a month ago, on August 5, 2022, UTM Schneider had given Weddle a good work evaluation, stating that he was performing above average and that he gets along well with others. *Id.* at 2. But now, the work evaluation from September 2, 2022, resulted in a bad evaluation. *Id.* at 4-5. Weddle alleges that the only changed

circumstance between the two evaluations were the complaints about Officer Hanely

that he and his family submitted. *Id.* at 5.

Weddle identifies several claims that he wishes to assert: (1) an excessive force

claim against Officer Hanely; (2) a First Amendment retaliation claim against Officer

Hanely for locking him into his cell on August 8, submitting a false major misconduct

report against him, threatening to kill him, and having him fired from his job; (3) a First

Amendment retaliation claim against UTM Schneider for firing him from his job and

submitting a false bad work evaluation; and (4) a claim for injunctive relief against

Warden Ron Neal to be given back the same or a better-paying job and to prevent

further harassment. The allegations in the complaint do not state an excessive force

claim against Officer Hanely, but Weddle may proceed on the First Amendment claims

and the claim for injunctive relief.

The complaint does not plausibly allege that Officer Hanely used excessive force

against Weddle. The "core requirement" for an excessive force claim under the Eighth

Amendment is that the defendant "used force not in a good-faith effort to maintain or

restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*,

589 F.3d 887, 890 (7th Cir. 2009) (citation omitted). But "not every push or shove by a

prison guard violates a prisoner's constitutional rights." *DeWalt v. Carter*, 224 F.3d 607,

620 (7th Cir. 2000), *abrogated on other grounds by Savory v. Cannon*, 947 F.3d 409 (7th Cir.

2020). "An Eighth Amendment claim cannot be predicated on a *de minimis* use of force."

*O'Malley v. Litscher*, 465 F.3d 799, 805 (7th Cir. 2006). Here, Officer Hanely's shove out of

the way that resulted in bruising is the type of act the Seventh Circuit has deemed

4

insufficient to support an Eighth Amendment claim. *See Jones v. Walker*, 358 F. App'x

708, 713 (7th Cir. 2009) ("A single shove that results in bruising is de minimis force that

will not support a claim of excessive force.").

However, the remaining allegations state a First Amendment retaliation claim

against Officer Hanely and UTM Schneider. "To establish a prima facie case of unlawful

retaliation, a plaintiff must show (1) he engaged in activity protected by the First

Amendment; (2) he suffered a deprivation that would likely deter First Amendment

activity in the future; and (3) the First Amendment activity was at least a motivating

factor in the Defendants' decision to take the retaliatory action." *Douglas v. Reeves*, 964

F.3d 643, 646 (7th Cir. 2020) (internal quotation marks and citation omitted). When

determining whether an action is sufficiently adverse, courts consider "whether the

alleged conduct by the defendants would likely deter a person of ordinary firmness

from continuing to engage in protected activity." *Id.* (quoting *Surita v. Hyde*, 665 F.3d

860, 878 (7th Cir. 2011)). "This is an objective standard; it does not hinge on the personal

experience of the plaintiff." *Holleman v. Zatecky*, 951 F.3d 873, 880-81 (7th Cir. 2020).

Even though an inmate does not have a constitutional right to a prison job, "an act in

retaliation for the exercise of a constitutionally protected right is actionable under

Section 1983 even if the act, when taken for different reasons, would have been

proper." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (citation omitted). Losing

one's source of income is a deprivation that could "dissuade a reasonable person from

engaging in future First Amendment activity." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th

Cir. 2015).

Here, Weddle's grievances and written complaints about Officer Hanely's behavior are protected First Amendment behavior. It appears from the complaint that Officer Hanely's actions may have preceded Weddle's protected activity and therefore could not have been motivated by them. But giving Weddle the inferences to which he is entitled at this stage, he may proceed on a First Amendment retaliation claim against Officer Hanely for submitting a false major misconduct report against him, threatening to kill him, and having him fired from his job. The remaining allegedly retaliatory act—locking him into his cell on August 8—is not actionable because in the prison context, being locked in one's cell for a day would not deter a prisoner of ordinary firmness from exercising their First Amendment rights. "[T]he harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse. 'Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before an action taken against them is considered adverse.'" *Holleman*, 951 F.3d at 880-81 (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 398 (6th Cir. 1999)).

As to UTM Schneider, Weddle he has alleged a clear link between his job loss and the grievances he filed against Officer Hanely. Therefore, Weddle may proceed on a First Amendment retaliation claim against UTM Schneider based on the bad false bad work evaluation and the loss of his prison job.

Finally, Weddle seeks leave to proceed against Warden Neal for injunctive relief to either receive his sanitation job back or be given an equivalently or higher paid job in his cell block.[1] He may proceed on this claim.

For these reasons, the court:

(1) GRANTS Jamie Weddle leave to proceed against Officer Hanely in her individual capacity for compensatory and punitive damages for submitting a false major misconduct report against him, threatening to kill him, and having him fired from his job in retaliation for filing grievances and written complaints about her in violation of the First Amendment;

(2) GRANTS Jamie Weddle leave to proceed against Unit Team Manager Joseph Schneider in his individual capacity for compensatory and punitive damages for submitted a false bad work evaluation and firing him from his prison job in retaliation for filing grievances and written complaints about Officer Hanely in violation of the First Amendment;

(3) GRANTS Jamie Weddle leave to proceed against Warden Ron Neal in his official capacity for injunctive relief to be reinstated to his former job or given an equivalent one to remedy the allegedly retaliatory termination in violation of the First Amendment;

(4) DISMISSES all other claims;

---

[1] Weddle also asks for injunction to prevent defendants and other staff from further retaliating against him, but he does not explain how he is currently being retaliated against, so this is too vague to form the basis of a claim for relief.

(5) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Ron Neal, Joseph Schneider, and Hanely at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 2);

(6) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(7) ORDERS, under 42 U.S.C. § 1997e(g)(2), Ron Neal, Joseph Schneider, and Hanely to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on February 15, 2023

/s/ JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT